IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RUDYVER GARCIA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-492-ECM-CWB |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Rudyver Garcia has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  (Doc. 1).[1]  For the reasons discussed below, the Magistrate Judge recommends that the § 2255 motion be denied without an evidentiary hearing and that this action be dismissed with prejudice.

**I.   Background**

In January 2018, Garcia and two codefendants were named in a twelve-count indictment charging them with conspiring to distribute controlled substances, several substantive drug distribution counts, possessing a firearm to further drug trafficking, laundering money, and conspiring to launder money.[2]  (Doc. 4-2 at pp. 40-50).  On September 6, 2019, Garcia pled guilty under a written plea agreement to two of the counts: (1) conspiracy to distribute 50 or more grams of methamphetamine and 100 or more grams of heroin in violation of 21 U.S.C. §§ 846 and

---

[1] Documents filed in this action are referenced as "Doc."  Documents filed in the underlying criminal case (No. 1:18-cr-9-WKW) are referenced as "Crim. Doc."  Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and may not correspond to pagination on the versions presented for filing.

[2] Named in the indictment with Garcia as codefendants were Johnny Martinez and Kevin Whitely. (Doc. 4-2 at pp. 40-50).

1

841(b)(1)(A) (Count 1) and (2) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(3) and (h) (Count 10). (Doc. 4-2 at pp. 60-79). The plea agreement contained a provision in which Garcia waived the right to appeal or collaterally attack his sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct. (*Id*. at pp. 88-89).

On February 12, 2020, the district court sentenced Garcia to imprisonment for 300 months. (Doc. 4-2 at p. 127). Garcia in turn appealed on grounds that the district court abused its discretion by denying his request at sentencing for a four-level variance. (Doc. 4-1). On August 20, 2020, the Eleventh Circuit dismissed Garcia's appeal due to the appeal waiver in his plea agreement. *United States v. Garcia*, 817 F. App'x 929 (11th Cir. 2020) (per curiam). (Crim. Doc. 277 at pp. 2-3).

On June 24, 2021, Garcia filed the pending motion under 28 U.S.C. § 2255 to assert the following claims for ineffective assistance of counsel:

1. that counsel failed to properly object to the enhancements and drug amounts listed in the presentence investigation report ("PSR");

2. that counsel failed to challenge the PSR's double counting of crystal meth (known as "ICE") that Garcia sold to a government informant;

3. that counsel failed to challenge the government informant's false statements about the amount of ICE Garcia sold to him;

4. that counsel failed to challenge the district court's imposition of a four-level organizer/leader enhancement under U.S.S.G. § 3B1.1(a); and

5. that counsel failed to show him a copy of the final version of the PSR so he could review it for errors.

(Doc. 1 at pp. 4-15).

**II.   Legal Standard**

Relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if

condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  A prisoner may obtain relief under § 2255 when the trial court imposes a sentence that (1) violates the Constitution or laws of the United States, (2) exceeds its jurisdiction, (3) exceeds the maximum authorized by law, or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  If a court determines that a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  The burden of establishing that vacatur of a conviction or sentence is appropriate falls upon the petitioning prisoner.  *Beeman v. United States*, 871 F.3d 1215, 1221-22 (11th Cir. 2017).

**III.   Discussion**

    **A.   Claims of Ineffective Assistance of Counsel**

To prevail on an ineffective-assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced him.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Performance is deficient when it falls below "an objective standard of reasonableness and [is] outside the wide range of professionally competent assistance."  *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (internal quotation marks omitted).  Generally speaking, in order to establish prejudice a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Unless a petitioner satisfies the showings required under both the performance and prejudice prongs of *Strickland*, relief on an ineffective-assistance claim should be denied.  *Id.* at 687.  Once a court decides that one of the requisite showings under *Strickland* has not been made, it need not decide whether

3

the other has. *Id*. at 697; *see Clark v. Comm'r, Alabama Dep't of Corr*., 988 F.3d 1326, 1331 (11th Cir. 2021).

### 1. Failure to Make Proper Objections to the PSR

Garcia asserts that attorney Aimee C. Smith rendered ineffective assistance at sentencing by "fail[ing] to make the proper objections to the enhancements and drug amounts listed in [his] PSR." (Doc. 1 at p. 4). He maintains that if Smith had made objections, which are not specified in his motion, he would have received a lesser sentence. (*Id*.).

In an affidavit addressing Garcia's claim, Smith states that she reviewed an initial draft of the PSR with Garcia on November 6, 2019 and drafted a list of 23 objections, including objections to enhancements and drug amounts listed in the PSR, which she then discussed with Garcia. (Doc. 4 at pp. 1-2; *see also* Doc. 12-1 at pp. 1-3). Smith states she met with Garcia several more times in November and December 2019 to review and discuss the draft PSR and potential objections. (*Id*.). During those discussions, and with Garcia's input and approval, Smith whittled the list of 23 objections down to 8. (*Id*. at p. 3; Doc. 12 at p. 1). The 8 objections to the draft PSR were then submitted to the probation officer on December 18, 2019. (*Id*.; *see also* Doc. 12-1 at pp. 4-5). None of the 8 objections concerned sentence enhancements or attributable drug amounts. According to Smith, by the time the final version of the PSR was completed on January 13, 2020, the 8 objections were either "resolved or incorporated into the final PSR." (Doc. 12 at p. 1; *see* Doc. 4 at p. 3). Thus, by the February 12, 2020 sentencing hearing, there were no remaining objections to be argued.

Garcia does no more than allege Smith was ineffective for failing to make proper objections. (*See* Doc. 1 at p. 4). He identifies no grounds upon which Smith should have objected and points to no specific matters in the PSR to which Smith failed to object. On this record, and

given the conclusory nature of his allegations, Garcia has failed to demonstrate that Smith's actions were professionally unreasonable or that he was prejudiced.  *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).

## 2. Failure to Challenge the PSR's Double Counting of ICE

In a separate claim, Garcia asserts that Smith was ineffective for failing to challenge the PSR's "double counting" of ICE sold to government informant Joshua Hood.  (Doc. 1 at pp. 5, 15).  According to Garcia, the PSR improperly attributed 553.31 grams of ICE to him by counting that amount twice: once as the 553.31 grams of ICE that drug agents seized during a search of Hood's residence in October 2016, and a second time by including the same amount in the 8 pounds of ICE that Garcia was found to have sold based upon Hood's statements to agents about drug purchases from Garcia before the October 2016 search.  (*Id.*).

Contrary to Garcia's assertion, the PSR did not double count any quantities of ICE.  In detailing the drug amounts for which Garcia was responsible, the PSR noted that the total quantity of ICE attributable to Garcia excluded amounts seized in the search of Hood's residence.  (*See* Doc. 14-1 at p. 11, ¶ 28).  The 8 pounds of ICE attributed to Garcia thus did not double count 553.31 grams.  (*Id.*).

Even if the 553.31 grams of ICE were double counted, Garcia can show no prejudice.  Excluding 553.31 grams of ICE from the attributed drug quantities would not reduce his total offense level below 43.  The PSR calculated Garcia's total offense level to be level 50.  (*See* Doc. 14-1 at p. 14, ¶ 39).  The maximum offense level in the Sentencing Table in Chapter 5 of the Sentencing Guidelines is level 43.  *See* U.S.S.G. Ch. 5 Pt. A.  The commentary to the Sentencing Table provides that whenever the total offense level is calculated to exceed 43, the total offense level is to be treated as level 43.  U.S.S.G. Ch. 5 Pt. A cmt. n.2.  Because Garcia had a calculated

total offense level of 50, he therefore was assigned a total offense level of 43.  Excluding the "extra" 553.31 grams of ICE would reduce his base offense level by, at most, 2 levels—from 38 to 36.  *See* U.S.S.G. § 2D1.1.  His calculated total offense level would then drop only to level 48.  As a result, Garcia's total offense level would still be treated as level 43 even if the "extra" 553.31 grams of ICE were excluded.  *See* U.S.S.G. Ch. 5 Pt. A cmt. n.2.

### 3. Failure to Challenge Hood's Statements about ICE Purchases

Garcia further asserts that Smith was ineffective for failing to challenge Hood's allegedly false statements to drug agents about the amount of ICE he purchased from Garcia.  (Doc. 1 at pp. 7, 15).  Hood told agents that he had purchased one pound of ICE from Garcia per week for the two months preceding his arrest in October 2016.  (Doc. 14-1 at pp. 7-8, ¶ 15).  Hood's statements about the purchases supported the PSR's attribution of 8 pounds of ICE to Garcia.  Garcia maintains that Hood's statements were false and that Smith should have challenged Hood's credibility at sentencing.  (Doc. 1 at pp. 7, 15).

Hood was not called to testify at Garcia's sentencing hearing.  In her affidavit addressing the issue, Smith states that because Garcia entered a guilty plea, the only chance to object to Hood's statements would have been at a sentencing hearing where Hood was called to testify but that she did not want Hood and others testifying against Garcia at sentencing and feared risking the three-point reduction credited to Garcia in the PSR for acceptance of responsibility.  (Doc 4. at p. 5).

The government observes that any acceptance-of-responsibility reduction was moot in Garcia's case because Garcia's calculated total offense level was so far above the maximum total offense level under the guidelines that a three-point reduction did not affect his sentencing range.  (Doc. 14 at p. 14).  Nonetheless, the government acknowledges that Smith's decision not to challenge Hood's statements at sentencing was not irrational, given that acceptance of

responsibility fits into the general factors the district court considers when determining an appropriate sentence. *See* 18 U.S.C. § 3553(a)(l). Thus, had Smith challenged Hood's credibility at sentencing, she risked having the district court find that Garcia was not remorseful and generally did not accept responsibility—potentially resulting in imposition of a harsher sentence. (*See* Doc. 14 at p. 14).

Garcia presents no evidence that Hood was lying in his statements to drug agents or that attacking Hood's credibility would have helped, rather than hurt, his position. Garcia therefore has failed to demonstrate that Smith's actions were professionally unreasonable or that he was prejudiced.

**4. Failure to Challenge Organizer/Leader Enhancement**

Garcia next asserts that Smith was ineffective for failing to challenge the district court's imposition of a four-level organizer/leader enhancement under U.S.S.G. § 3B1.1(a). (Doc. 1 at p. 8). Section 3B1.1(a) provides that a defendant's offense level should be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). For the enhancement to apply, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2; *See also United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009) ("[T[here must be evidence that the defendant asserted some control, influence or decision-making authority over another participant in the criminal activity."). Garcia asserts that "there was not 5 or more people in the conspiracy, it was not extensive, nor did any of the other coconspirators state that I directed or supervised their overt conduct." (Doc. 1 at p. 8).

Garcia's argument is not supported by the facts. Smith did request a four-level downward variance from the district court and argued that the court should find that Garcia was not an

7

organizer or leader but a comparatively "low level" drug dealer such that the organizer/leader enhancement should not be applied. (Doc. 4-2 at pp. 113-15). The district court rejected Smith's argument, explaining its reasoning at length, before telling Garcia, "I've heard your lawyer's arguments, and I find that you are not a low-level drug dealer and that these levels do apply to you. In fact, they understate the amount of drug activity that you have been involved in." (*Id*. at p. 125). In rejecting the request for a variance, the district court looked at many factors, including the amount and variety of drugs Garcia trafficked, the sophisticated means Garcia used to conduct and conceal his illegal activities, and the multiple states in which he engaged in trafficking. (*Id.* at pp. 122-25).

Despite Garcia's unsupported assertions to the contrary, there was ample evidence set forth in the PSR (and recognized by the district court at sentencing) to establish that Garcia asserted some control, influence, or decision-making authority over participants in a criminal activity that "involved five or more participants or was otherwise extensive." *See* U.S.S.G. § 3B1.1(a). Garcia points to no argument against imposition of the organizer/leader enhancement that Smith should have made but did not. He therefore cannot show either deficient performance or resulting prejudice.

### 5. Failure to Show the Final Version of the PSR

Finally, Garcia asserts that Smith was ineffective for failing to show him a copy of the final version of the PSR so he could review it for errors. (Doc. 1 at p. 14).

At sentencing, the district court asked Smith if she and Garcia had the opportunity to review the PSR, and Smith replied, "We have, Your honor." (Doc. 4-2 at p. 98). Garcia did not protest or otherwise respond to Smith's statement. Moreover, Smith's affidavit reflects that she discussed the PSR with Garcia at every stage of revision, from the initial draft to the final version. (Doc. 4

8

at pp. 1-2; Doc. 12 at p. 1).  And Garcia identifies no errors in the PSR that he would have objected to if he had reviewed the final version.  Garcia's cursory allegations simply do not support a claim for ineffective assistance of counsel.

### IV.  Conclusion

For the reasons stated above, it is the **RECOMMENDATION** of the Magistrate Judge that the § 2255 motion be **DENIED** without an evidentiary hearing and that this case be **DISMISSED** with prejudice.

It is **ORDERED** that any objections to this Recommendation must be filed no later than **May 27, 2024**.  An objecting party must identify the specific portion(s) of any factual findings or legal conclusions to which the objection is made and must describe in detail the basis for each objection.  Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a *de novo* determination by the District Judge of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Judge, except upon grounds of plain error or manifest injustice.  *See* 11th Cir. R. 3-1; *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this the 13th day of May 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**